UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

WINSTON RILEY,
    *Petitioner*,

v.

SCOTT SEMPLE,
    *Respondent*.

No. 3:16-CV-01613 (VAB)

**RULING ON PETITION FOR WRIT OF *HABEAS CORPUS***

Winston Riley ("Petitioner") filed this petition of *habeas corpus* under 28 U.S.C. § 2254, challenging his conviction on charges of criminal attempt to commit robbery and criminal attempt to commit larceny.

For the reasons that follow, the Second Amended Petition is **DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Factual Allegations

The Connecticut Appellate Court determined that the jury reasonably could have found the facts as follows.

> On March 18, 2012, the [petitioner] drove to the Mohegan Sun Casino in Montville in order to make up an $800 gambling loss from the prior day. Upon his arrival at the casino, the [petitioner] attempted to withdraw money from an automated teller machine, but could not do so because his wife had transferred money out of their account. After returning to his car and falling asleep for a period of time, the [petitioner] woke up and decided to commit a robbery. The [petitioner] thus slipped a knife up the sleeve of his sweatshirt and began to walk around the parking garage.
>
> Louise Carty, an eighty-three year old woman, was at the casino on March 18, 2012, to play the penny slots. As she was entering the elevator in the Winter Parking Garage, Carty noticed that a man, later identified as the [petitioner], was following her inside. After the elevator door closed, the man, whom Carty was never able to

1

identify, "all of a sudden pull[ed] a knife out of his pocket and head[ed] toward me." In response, Carty screamed, "No, no, no," and shoved the man, causing him to jump away from her. Carty then grabbed the man's sweatshirt by the sleeve and pursued him off the elevator. The man never took or demanded money or property from Carty or verbally threatened her.

At trial, the [petitioner] sought to defend himself by raising the defense of renunciation under General Statutes § 53a–49(c). In support of that defense, he testified as follows. First, he admitted that he was the man who had accosted Carty in the elevator. Having initially intended to rob her, he admittedly followed her into the elevator, pulled a knife out of his sleeve to confront her and took two or three steps toward her after the elevator doors closed. The [petitioner] described as follows what happened in the elevator as he began to approach Carty:

"[Defense Counsel]: What was your intention at that moment?

"[The [Petitioner]]: My intentions as I approached her, as I took, like, the second or third step to her, I'm, like, oh, my God, this could by my grandmother; what am I doing?

"[Defense Counsel]: So, when you thought that, what were you going to do about that; were you going to do anything about your thought?

"[The [Petitioner]]: I immediately said I'm sorry. I basically curled the knife toward myself, and I was, like, I'm sorry, I'm sorry. She then grabbed me."

Carty, by contrast, testified that, although she heard the man mumble something after she shoved him, she could not make out what he said and did not hear him say that he was sorry. After she and the man exited the elevator, the man hustled away from Carty while she told others in the vicinity that the man had tried to knife her.

*State v. Riley*, 159 Conn. App. 462, 466–67, 123 A.3d 123, 127–28 (2015), *cert. denied*, 319 Conn. 949, 125 A.3d 528 (2015) (footnote omitted).

## B. Procedural Background

Mr. Riley faced trial in Connecticut Superior Court for the judicial district of New London on charges of attempted robbery in the first degree, Conn. Gen. Stat §§ 53a-49, 53a-134(a); threating in the second degree, Conn. Gen. Stat § 53a-62; reckless endangerment, Conn. Gen. Stat § 53a-63; larceny in the second degree, Conn. Gen. Stat. 53a-123; and carrying a dangerous weapon, Conn. Gen. Stat § 53-206. On March 16, 2013, a jury acquitted Mr. Riley of the reckless endangerment charge, but convicted him on all of the other charges. A judge subsequently sentenced him to a term of imprisonment of six years.

On direct appeal, Mr. Riley challenged only the two attempt charges. He argued that there was insufficient evidence to support the jury's rejection of his renunciation defense and that the jury charge on the defense of renunciation was constitutionally inadequate. The Connecticut Appellate Court affirmed the conviction and the Connecticut Supreme Court denied the petition for certification. *Riley*, 159 Conn. App. at 464–66, 123 A.3d at 126–27.

In 2014, while his direct appeal was pending, Mr. Riley filed a petition for writ of *habeas corpus* in state court on the grounds that trial counsel was ineffective and the police violated his rights by questioning him after he had requested an attorney. Resp't's Mem. App. G, ECF No. 16-8 at 4. A trial was held in January 2018. *Riley v. Warden, State Prison*, No. TSR-CV14-4006347-S. A decision in that matter has yet to issue.

Mr. Riley filed a second state *habeas* petition in 2017 challenging the denial of his request for immigration parole. Resp't's Mem. App. H, ECF No. 16-9 at 5. That case remains pending. *Riley v. Commissioner of Correction*, No. TSR-CV17-4008656-S. No issues from these state petitions are included as grounds for relief in this federal petition.

Mr. Riley petitioned this Court for relief on September 26, 2016. The operative petition is the Second Amended Petition.

## II.  STANDARD OF REVIEW

A federal court will review a petition for writ of *habeas corpus* challenging a state court conviction, only if the petitioner claims that his custody violates the Constitution or federal laws. 28 U.S.C. § 2254(a).

A federal court may grant a petition for a writ of *habeas corpus* filed by a person in state custody with regard to any claim that was rejected on the merits by the state court if the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[F]ederal law as defined by the Supreme Court may be either a generalized standard enunciated in the Court's case law or a bright-line rule designed to effectuate such a standard in a particular context." *Kennaugh v. Miller*, 289 F.3d 36, 42 (2d Cir. 2001), *cert. denied*, 537 U.S. 909 (2002). "Clearly established federal law" is found in holdings, not *dicta*, of the Supreme Court at the time of the state court decision. *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1702 (2014). Second Circuit law which does not have a counterpart in Supreme Court jurisprudence cannot provide a basis for federal *habeas* relief. *See Renico v. Lett*, 559 U.S. 766, 778 (2010) (holding that court of appeals erred in relying on its own decision in a federal habeas action); *see also Kane v. Garcia Espitia*, 546 U.S. 9, 10 (2005) (stating that absent a Supreme Court case

establishing a particular right, federal court inference of right does not warrant federal *habeas* relief).

A decision is "contrary to" clearly established federal law where the state court applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court unreasonably applies Supreme Court law when the court has correctly identified the governing law, but unreasonably applies that law to the facts of the case. *Id.* The state court decision must be more than incorrect; it must be "'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fair minded disagreement.'" *Virginia v. LeBlanc*, ___ U.S. ___, 137 S. Ct. 1726, 1728 (2017) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Burt v. Titlow*, 571 U.S. 12, 20 (2013) (providing that federal *habeas* relief is warranted only where the state criminal justice system has experienced an "extreme malfunction"); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (stating that objective unreasonableness is "a substantially higher threshold" than incorrectness). Even clear error will not establish an unreasonable application of Supreme Court law. *LeBlanc*, 137 S. Ct. at 1728 (quoting *Woods v. Donald*, __ U.S. __, 135 S. Ct. 1372, 1376 (2015) (*per curiam*)).

When reviewing a *habeas* petition, a court will presume that the factual determinations of the state court are correct. The petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *accord Cullen v. Pinholster*, 563 U.S. 170, 171 (2011) (stating that the standard for evaluating state court rulings where constitutional claims have been considered on the merits and which afford state court rulings the benefit of the doubt is highly deferential and difficult for petitioner to meet). The presumption of correctness, which applies to "historical facts, that is, recitals of external events and the credibility of the

5

witnesses narrating them[,]" will be overturned only if the material facts were not adequately developed by the state court or if the factual determination is not adequately supported by the record. *Smith v. Mann*, 173 F.3d 73, 76 (2d Cir. 1999) (internal quotation marks and citation omitted).

Lastly, a federal court's review under Section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. *Pinholster*, 563 U.S. at 180. Because collateral review of a conviction applies a different standard than the direct appeal, an error that may have supported reversal on direct appeal will not necessarily be sufficient to grant a *habeas* petition. *Brecht v. Abrahamson*, 507 U.S. 619, 634 (1993).

## III. DISCUSSION

Mr. Riley asserts three grounds for relief: (1) the trial court omitted a critical portion of his requested jury instruction on the defense of renunciation; (2) the trial court's failure to clarify the renunciation instruction misled the jury; and (3) Connecticut Appellate Court failed to follow U.S. Supreme Court precedent in deciding his appeal.

The Court disagrees and addresses each of Mr. Riley's contentions in turn.

### A. Jury Instruction

First, Mr. Riley argues that the trial court omitted his requested jury instruction on the defense of renunciation, and deprived him of a constitutional right. *Id.* Mr. Riley relies on state court decisions that cite *Washington v. Texas*, 388 U.S. 14 (1967), in support of his point. *See, e.g.*, *State v. Anderson*, 227 Conn. 518, 526, 631 A.2d 1149, 1153 (1993); *State v. Fuller*, 199 Conn. 273, 278, 506 A.2d 556, 559 (1986); *State v. Corchado*, 188 Conn. 653, 660, 453 A.2d 427, 431 (1982). Respondent argues that the the U.S. Supreme Court has not extended the right

to present a defense to embrace a constitutional right to a jury instructions regarding a defense. The Court agrees.

Connecticut law establishing the defense of renunciation provides: "When the actor's conduct would otherwise constitute an attempt . . . it shall be a defense that he abandoned his effort to commit the crime or otherwise prevented its commission, under circumstances manifesting a complete and voluntary renunciation of his criminal purpose." Conn. Gen. Stat. § 53a-49(c).

The U.S. Supreme Court has held that criminal defendants have a constitutional right to present a defense. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). In *Washington*, the Supreme Court held that an accused person has a Sixth Amendment right to compulsory process to obtain the presence of witnesses at trial to establish his defense. 388 U.S. at 18–19.

In other cases, the Supreme Court has addressed the constitutional right to present a defense regarding the exclusion of evidence or the testimony of defense witnesses, *Gilmore v. Taylor*, 508 U.S. 333, 343 (1993) (listing cases). But, none of these cases involved restrictions on a defendant's ability to present an affirmative defense. *Id.* There, the Supreme Court rejected the argument that the right to present a defense includes the right to have the jury consider that defense after clear instruction, stating that "such an expansive reading of our cases would make a nullity of the rule . . . that instructional errors of state law generally may not form the basis for federal habeas relief." *Id.* at 344; *see also id.* at 351 (noting that Supreme Court cases do not resolve conclusively whether giving an instruction reasonably likely to prevent the jury from considering an affirmative defense violated due process) (O'Connor, J., concurring in the judgment); *Morales v. Brighthaupt*, No. 3:12cv206 (WWE), 2015 WL 6456540, at *4 (D. Conn. Oct. 26, 2015) (providing that the right to present a defense under Sixth or Fourteenth

7

Amendment does not guarantee the right to have a judge instruct a jury on any defense defendant wishes to raise).

On direct appeal, Mr. Riley argued that the trial court's failure to give his requested instruction in its entirety on the defense of renunciation implicated his Sixth Amendment right to present a defense. Brief of Defendant-Appellant, Resp't's Mem. App. A, ECF No. 16-2 at 14. He argued that, without the rejected language, the jury could not determine whether the State had disproved his renunciation defense beyond a reasonable doubt. *Riley*, 159 Conn. App. at 477, 123 A.3d at 133.

Mr. Riley interpreted the statute as providing that renunciation could be established in two ways: (1) by a complete and voluntary abandonment of the crime; or (2) by taking affirmative steps to prevent commission of the crime. Thus, he requested that the jury be instructed that he was entitled to the defense of renunciation, if the State could not disprove that he took affirmative steps to prevent commission of the crime. *Id.* at 478–79, 123 A.3d at 133-34.

The trial court, however, interpreted the statute as containing two elements. First, the defendant either abandoned his efforts or took affirmative steps to prevent commission of the crime. Second, the defendant's actions were complete and voluntary. By the agreement of the parties, the first element was met. *Id.* at 481, 123 A.3d at 135.

The Connecticut Appellate Court found that Mr. Riley's argument was based on a fundamental misunderstanding of the statute; he combined the first part of the first element and the second element of the defense and considered them one element and considered the second part of the first element as a second, alternative, way to establish renunciation. *Id.* at 480, 123 A.3d at 134–35.

In the absence of a clearly established right to jury instructions on a defense, the state court decision cannot be contrary to or an unreasonable application of clearly established federal law. *See Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) ("[I]t is not 'an unreasonable application of' 'clearly established Federal law' for a state court to decline to apply a specific legal rule that has not been squarely established by th[e] [Supreme] Court.") (citations omitted). This argument thus cannot be cognizable in a federal *habeas* petition. *See Engle v. Isaac*, 456 U.S. 107, 121 n.21 (1982). ("[A] 'mere error of state law' is not a denial of due process." (citation omitted)).

The petition therefore is denied as to the first ground for relief.

**B.    Lack of Clarification**

Second, Mr. Riley argues that the jury was misled when the court failed to clarify the renunciation instruction. Mr. Riley did not present this ground to the Connecticut Appellate Court as a separate ground for relief. Rather, he referenced this claim within the argument on his first ground for relief and argued that the trial court's failure to include additional jury instruction language to address the State's rebuttal argument—that it was too late for Mr. Riley to have renounced his criminal conduct—"failed to properly guide the jury in evaluating the defendant's renunciation defense." Resp't's Mem. App. A, ECF No. 16-2 at 17.

The Connecticut Appellate Court declined to address this claim because Mr. Riley did not adequately brief the claim by providing separate analysis. *Riley*, 159 Conn. App. at 480 n.6, 123 A.3d at 134 n.6. The respondent argues that Mr. Riley's claim fails because of a procedural default. The Court agrees.

### 1. Procedural Default

Under the procedural default doctrine, a federal court will not review the merits of a claim raised in a *habeas* petition—including a constitutional claim—if the state court declined to address the claim because the prisoner failed to meet an "adequate and independent . . . state procedural requirement." *See Walker v. Martin*, 562 U.S. 307, 315–16 (2011) (citations omitted). A state rule or requirement must be "firmly established and regularly followed" by the state in question to qualify as an adequate procedural ground. *See Beard v. Kindler*, 558 U.S. 53, 60–61 (2009) (internal quotation marks and citation omitted). A state court decision will be "independent" when it "fairly appear[s] to rest primarily on state procedural law." *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006) (citation omitted).

In considering this claim, the Connecticut Appellate Court stated:

> Because this issue was not adequately briefed, we do not address it. *See State v. Book*, 155 Conn. App. 560, 572–73, 109 A.3d 1027 (2015) ("[W]e are not required to review claims that are inadequately briefed. . . . We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." [Internal quotation marks omitted.]).

*Riley*, 159 Conn. App. at 480 n.6, 123 A.3d at 134 n.6. This practice has consistently been followed by that court. *See, e.g.*, *Henderson v. State*, 151 Conn. App. 246, 262–63, 95 A.3d 1, 11–12 (2014) ("[W]e are not required to review claims that are inadequately briefed."); *Lynn v. Lynn*, 145 Conn. App. 33, 38, 74 A.3d 506, 509 (2013) ("[a]ssignments of error which are merely mentioned but not briefed beyond a statement of the claim will be deemed abandoned and will not be reviewed by this court."); *Dichello v. Holgrath Corp.*, 49 Conn. App. 339, 348 n.8, 715 A.2d 765, 769 n.8 (1998) (declining to review the claim briefed in one paragraph without a citation of any authority). The Court concludes that the Connecticut Appellate Court's

decision was based on an independent and adequate state procedural law. The claim therefore is barred because of a procedural default.

### 2. Exceptions to Procedural Default

There are exceptions to the doctrine. Despite having defaulted on a federal claim in state court under an independent and adequate state procedural rule, a *habeas* petitioner may obtain review, if the petitioner can demonstrate "cause" for the default and actual "prejudice" resulting from the default, or the petitioner can show that failure to consider the claim will result in a "fundamental miscarriage of justice." *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).

#### a. For Cause

To establish "cause" to excuse procedural default, Mr. Riley must identify "some external impediment preventing counsel from constructing or raising the claim." *Murray v. Carrier*, 477 U.S. 478, 492 (1986). Cause may be shown by, for example, proof of "interference by officials" that impeded compliance with state rules, or "a showing that the factual or legal basis for a claim was not reasonably available to [defense] counsel." *See McCleskey v. Zant*, 499 U.S. 467, 494 (1991) (citation omitted).

Mr. Riley, however, has not filed a reply brief identifying any "interference by officials" sufficient to excuse the procedural default. In addition, although deficient performance by an attorney can constitute cause for failing to comply with a state's procedural rule, "[a]ttorney error short of ineffective assistance of counsel, does not constitute cause for a procedural default . . . ." *Murray*, 477 U.S. at 492; *see also Maples v. Thomas*, 565 U.S. 266, 281 (2012) (providing that attorney negligence does not constitute cause). Moreover, "a claim of ineffective assistance" must be raised in a state court proceeding "as an independent claim before it may be used to establish cause for a procedural default." *Murray*, 477 U.S. at 489.

The respondent has submitted a copy of Mr. Riley's pending state *habeas* petition in which Mr. Riley asserted, among other arguments, a claim that trial counsel was ineffective for using an "incorrect defense." ECF No. 16-8 at 4. The state court, however, has yet to issue a decision on that petition. Thus, even if the ineffective assistance of counsel claim could be construed to encompass this claim, the claim has not been properly exhausted. It therefore cannot constitute cause to excuse the procedural default. *See Edwards*, 529 U.S. at 452–53 ("The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases.").

As Mr. Riley has not demonstrated cause, the Court need not reach the question of prejudice. *See, e.g.*, *Murray*, 477 U.S. at 496 (referencing "the cause and prejudice test 'in the conjunctive'") (citation omitted).

b. **Fundamental Miscarriage of Justice**

Neither has Mr. Riley presented any evidence showing that failure to consider this claim will result in a fundamental miscarriage of justice, that is, "the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496.

To satisfy this exception, a petitioner must present "evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error." *Schlup v. Delo*, 513 U.S. 298, 316 (1995). To establish a credible claim of actual innocence, a petitioner must support the petitioner's claim "with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eye-witness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324. A petitioner must establish factual innocence not "legal innocence." *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).

Having made no factual showing, Mr. Riley cannot establish actual innocence.

Because this basis for review is precluded by procedural default, and no exception to the doctrine applies, the petition is denied as to this ground.

Furthermore, this claim was included on direct appeal as part of Mr. Riley's challenge to the jury instruction as a violation of Mr. Riley's right to present a defense. The claim is also denied for the reasons stated in the preceding section.

### C. Unreasonable Application of Supreme Court Law

Third and finally, Mr. Riley argues that the Connecticut Appellate Court "decided a question on law that is probably not in accordance with the applicable law of the Supreme Court." ECF No. 20 at 13. Mr. Riley includes a reference to his petition for certification to the Connecticut Supreme Court. *Id.*

In the petition for certification, Resp't's Mem. App. E, ECF No. 16-6, Mr. Riley cites one Supreme Court case for the general proposition that criminal defendants have a constitutional right to present a complete defense. *Id.* at 10. As discussed above, the federal constitutional right to present a defense has not been extended to jury instructions as a matter of clearly established federal law. Thus, there is no basis in the law to support Mr. Riley's claim.

The petition is denied on this ground as well.

### V. CONCLUSION

For the reasons discussed above, the Second Amended Petition for Writ of *Habeas Corpus* is **DENIED**.

The Court concludes an appeal *in forma pauperis* from this Order would not be taken in good faith.[1] Thus, a certificate of appealability will not issue.

The Clerk is directed to enter judgment in favor of Respondent and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 2nd day of August, 2018.

    /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[1] An appeal may not be taken *in forma pauperis* if the Court certifies that an appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3). The Second Circuit has instructed:

> an application for leave to appeal in forma pauperis will have sufficient substance to warrant consideration only if, in addition to an adequate showing of indigence and of citizenship, it identifies with reasonable particularity the claimed errors which will be the basis for the appeal. If these requirements are satisfied, and if on consideration the trial judge is conscientiously convinced that there is no substantial question for review and that an appeal would be futile, or if he is convinced that there is no reasonable basis for the claims of alleged error, it is the duty of the trial judge, albeit not a pleasant duty, to certify that the appeal is not taken in good faith.

*United States v. Farley,* 238 F.2d 575, 576 (2d Cir. 1956) (internal citations and quotation marks omitted).